**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Civil Action No.**

| | |
|---|---|
| Hayward Industries, Inc.,<br><br>    Plaintiff,<br><br>   v.<br><br>AQUAMD LLC *d/b/a* AQUALANCE;<br>AQUAMAID POOL TECHS INC *d/b/a*<br>AQUAMAID POOL TECHS and/or PINCH<br>ME POOLS; POOL QUIP LLC *d/b/a* PINCH<br>ME POOLS and/or POOLQUIP; POOL QUIP<br>INC *d/b/a* PINCH ME POOLS and/or<br>POOLQUIP; and LANCE JONES,<br><br>    Defendants. | **COMPLAINT**<br>**(Jury Trial Demanded)** |

  Plaintiff Hayward Industries, Inc. ("Hayward" or "Plaintiff") is suing Defendants Aqua MD LLC *d/b/a* AQUALANCE, Aquamaid Pool Techs Inc *d/b/a* Aquamaid Pool Techs and Pinch Me Pools; and Pool Quip LLC *d/b/a* Pinch Me Pools and PoolQuip; PoolQuip, Inc. *d/b/a* Pinch Me Pools and PoolQuip; and Lance Jones (collectively, "Defendants") for (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125; (2) unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) unfair competition by passing off in violation of the Lanham Act, 15 U.S.C. § 1125(a); (4) common law trademark infringement and unfair competition under North Carolina law; (5) unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1; (6) tortious interference with contract and business relations; (7) unjust enrichment; and (8) contributory and/or vicarious infringement. These claims arise out of Defendants' infringement of Hayward's trademarks in connection with Defendants' unlawful and unauthorized advertisement and sale of Hayward-brand

1

products on the internet, including the sale of non-genuine, defective, damaged, and/or poor-quality products bearing the Hayward trademarks.

## PARTIES

1.      Plaintiff Hayward Industries, Inc, is a New Jersey corporation having its principal place of business located in Charlotte, North Carolina.

2.      Defendant AquaMD LLC, *d/b/a* AQUALANCE, is a limited liability company located at 4615 Martin Street, Fort Worth Texas, 76119 and 6940 W. Poly Webb Road, Arlington Texas 76016.   Defendant AquaMD LLC advertises and sells products through its website www.aquamd.net and through national e-commerce platforms such as eBay.com, where AquaMD uses the storefront AQUALANCE.[1]

3.      Defendant Aquamaid Pool Techs Inc., *d/b/a* Aquamaid Pool Techs and/or Pinch Me Pools, is a corporation located at 4615 Martin Street, Fort Worth, Texas 76119 and 6940 W. Poly Webb Road, Arlington Texas 76016. Defendant Aquamaid Pool Techs Inc. advertises and sells products over the internet, including through a storefront on Amazon.com called Pinch Me Pools.

4.      Defendant PoolQuip LLC, *d/b/a* Pinch Me Pools and/or PoolQuip, is a limited liability company located at 6940 W. Poly Webb Road, Arlington Texas 76016;  4615 Martin Street, Fort Worth Texas 786119; and/or 506 S. Spring Street #13308 Los Angeles, California 900103.   Defendant PoolQuip LLC advertises and sells products over the internet, including through a storefront on Amazon.com called Pinch Me Pools.

---

[1] A "storefront" is a section of an e-commerce website (*e.g.*, Amazon.com) devoted to one particular seller's products—in this case, pool equipment—and can be used to mask the true identity of the seller or to allow a seller to segment its product lines by price point or other features. Stated another way, a storefront is a *d/b/a* or alias or used by a seller to market products online.

5.     Defendant PoolQuip, Inc., *d/b/a* Pinch Me Pools and/or PoolQuip, is a corporation located at 4615 Martin Street, Fort Worth Texas 786119 and 7431-C Dogwood Park, Fort Worth, Texas 76118.  Defendant PoolQuip Inc. advertises and sells products over the internet, including through a storefront on Amazon.com called Pinch Me Pools.

6.     On information and belief, the above-listed entities share common ownership, management, and control; operate form the same or substantially similar business addresses; and function as a single enterprise. There is such a unity of interest and ownership among the defendant entities that any separateness between them has ceased or is a sham, and each acts as the agent or *alter ego* of each other and of their principal, Lance Jones, who, on information and belief, resides at 6940 W. Poly Webb Road, Arlington Texas.  In particular, and on information and belief, all of the above-listed entitles are controlled, owned, or operated by Mr. Jones. Mr. Jones is either the president, director, managing member, owner, and/or the principal decision-maker of each defendant entity and exercises substantial control over the operations, policies, and accused activities.  All of the above-listed defendant entities appear to be related, not only because Mr. Jones appears to control each one but also because all of the defendant entities share a common business address—4615 Martin Street, Fort Worth, Texas. Moreover nearly all the entities are associated with the 6940 W. Poly Webb Road, Arlington Texas address as well.  Given the close association of all four of the defendant entities and Mr. Jones, they will all be referred to collectively, "Defendants," unless otherwise noted.

## JURISDICTION

7.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (trademark and unfair competition cases), and 28 U.S.C. § 1367.  Plaintiff's federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and

3

(c), and its claims arising under the laws of the state of North Carolina are substantially related such that they form part of the same case or controversy under Article III of the United States Constitution.

8.    This Court has personal jurisdiction over Defendants because they have purposefully availed themselves of the privilege of doing business in North Carolina and have engaged in significant contacts with North Carolina, including advertising, sales, shipments, distribution, and/or offers thereof for infringing products bearing Hayward's trademarks in North Carolina and to North Carolina residents.  Defendants have engaged in these tortious activities with the knowledge that Hayward is located in North Carolina and will be harmed by Defendants' actions in North Carolina.

9.    Defendants have created one or more interactive online storefronts on Amazon (such as Pinch Me Pools) and/or on other retail platforms, such as aquamd.net, EBay.com (AquaLance), and Walmart.com (Pinch Me Pools), among others. Through these interactive online storefronts, Defendants actively advertise, market, sell, ship, and distribute infringing products bearing Hayward's trademarks in North Carolina and to North Carolina residents through the regular course of business.  Defendants do not place any geographic restrictions on who can buy their products from these on-line retail sites, and, as such, these products and the ads for them are made available to residents of North Carolina as well as to residents of other states.  In other words, via their own retail websites and via national e-commerce sites like EBay.com, Amazon.com, and Walmart.com, Defendants advertise and sell the trademark infringing products to consumers in North Carolina. Defendants continue to engage in these actions despite even though Hayward notified them of their unauthorized conduct and warned them that if it persisted, Hayward would be forced to sue.

4

10. Further, despite having been put on notice of their infringing activities, Defendants continue to engage in their tortious activities and to advertise, offer for sale, and/or sell their infringing products into North Carolina. Defendants intended their sales, distribution, shipping, marketing, and advertising of infringing goods to reach North Carolina and to affect Hayward's business operations in North Carolina, including but not limited to, causing confusion, mistake, or deceit among Hayward's customers.

11. Venue is proper in this District under, without limitation, 28 U.S.C. § 1391(b)(2)-(3), because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

A. **Hayward's Products and Associated Trademarks**

12. Hayward is a century-old company that, for at least 60 years has developed, manufactured, marketed, and sold cutting edge, environmentally responsible, and technologically advanced pool and spa equipment ("Hayward Products"). Over the years, Hayward has expanded its pool and spa equipment business into both residential and commercial markets and both in-ground and above ground pools and spas worldwide. Such products include, for example, variable speed pumps, heaters, filters, robotic pool cleaners, light fixtures, salt water chlorination systems, and other products for running and maintaining swimming pools and spas. Hayward sells Hayward Products in the United States through Amazon.com, among other national online retail platforms, and through a network of authorized on-line and brick and mortar resellers, distributors, and retailers (collectively "Authorized Sellers").

13. Hayward devotes a significant amount of time, energy, and resources to protecting the value of the Hayward brand, products, name, and reputation. By distributing Hayward

Products exclusively through Authorized Sellers, Hayward is able to ensure the safety and satisfaction of consumers and maintain the integrity and reputation of the Hayward brand. Safety, quality, customer support, and innovation are fundamental to a customer's decision to purchase a product in the highly competitive pool and spa equipment industry.

14. To promote and protect the Hayward brand, Hayward has registered numerous trademarks with the United States Patent and Trademark Office, including, but not limited to:

- HAYWARD® (U.S. Trademark Reg. Nos. 3,969,301 and 1,058,211);

- EXPERT LINE® (U.S. Trademark Reg. No. 6,113,689);

- H® (U.S. Trademark Reg. Nos. 4,016,737 and 1,132,980);

- SUPER PUMP® (U.S. Trademark Reg. No. 1,518,655);

- MAXFLO® (U.S. Trademark Reg. No. 6,048,151);

- TRISTAR® (U.S. Trademark Reg. No. 3,190,201);

- POWER-FLO® (U.S. Trademark Reg. No. 2,075,752);

- AQUA RITE® (U.S. Trademark Reg. Nos. 3,704,835);

- GOLDLINE® (U.S. Trademark Reg. No. 5,726,797)

(collectively, the "Hayward Trademarks").

15. The registrations for the Hayward Trademarks are valid and in full force and effect.

16. Hayward first registered the HAYWARD® mark in 1977 and has actively used the mark since at least as early as 1956. A number of the trademarks listed above have been in use and/or registered for twenty years or more and are incontestable.

17. Hayward actively uses all of the Hayward Trademarks in commerce throughout the United States to advertise, market, offer for sale, and sell the Hayward Products.

6

18.     Consumers recognize the Hayward Trademarks as being associated with innovative, safe, and high-quality pool and spa equipment.

19.     Because of the innovation, safety, and quality of Hayward products, consumers trust the Hayward brand and associate the Hayward name with innovative, safe, and high-quality pool and spa equipment.

20.     For all of these reasons, the Hayward Trademarks are widely recognized by the general consuming public of the United States and Hayward is recognized as the source of products bearing the Hayward Trademarks.

21.     Due to the superior quality and exclusive distribution of Hayward Products, and because Hayward is uniquely recognized as the source of these high quality products, the Hayward Trademarks have considerable value.

**B.      Hayward Has Implemented Strict Quality Controls to Protect the Value of the Hayward Trademarks and to Ensure Customers Receive the Genuine, High Quality Products They Expect from Hayward**

22.     Recognizing the risks to consumers and to the Hayward reputation caused by the sale of poor quality Hayward Products, Hayward has implemented quality controls that apply to Hayward Products sold in both brick-and-mortar stores and online.  Such controls help to protect consumers and the value and goodwill associated with the Hayward brand.

23.     One goal of these quality controls is to ensure that consumers who purchase Hayward Products online receive products that feature all of the special characteristics that consumers have come to expect from Hayward—including quality and reliability.

24.     The quality controls also seek to minimize the likelihood that poor quality products will reach consumers.  Preventing consumers from receiving damaged, defective, and poor quality products protects consumers from confusion and unsafe products and protects the value and goodwill associated with the Hayward brand.

7

25.     Hayward abides by its quality control requirements and requires its Authorized Sellers to abide by the quality control requirements.

26.     Hayward's ability to exercise these quality controls is essential to the integrity, safety, and quality of Hayward Products, as well as to the value of the Hayward Trademarks and other intellectual property.

**C.      Authorized Sellers Are Required to Adhere to Hayward's Quality Control and Customer Service Requirements**

27.     Hayward maintains strict quality controls over Hayward Products by selling its products to customers through its network of Authorized Sellers.

28.     Hayward permits Authorized Sellers to sell Hayward Products in specific channels (online or brick and mortar) and requires Authorized Sellers to abide by applicable authorized seller policies and agreements relating to quality controls, customer service, and other sales practices (collectively, the "Hayward Policies").

29.     The Hayward Policies limit to whom and where Authorized Sellers may sell Hayward Products online. For example, Hayward permits a sub-class of Authorized Sellers ("Authorized Resellers") to sell Hayward Products only to end users (as opposed to other distributors or retailers).  Authorized Resellers are specifically prohibited from selling products to other resellers or to anyone who intends to resell the products.  In that way, Hayward can maintain its quality controls because it can track its Authorized Sellers and Authorized Resellers to ensure that they are abiding by the Hayward Policies.[2]

---

[2] Unless otherwise noted, the term "Authorized Sellers" refers to all classes of sellers in Hayward's distribution chain, including Authorized Resellers and Authorized Online Resellers.

30.    Authorized Sellers (and its sub-classes) are also prohibited from selling products through unauthorized channels, such as certain third-party online marketplaces like Amazon, eBay, or Walmart.com, without prior written consent from Hayward.

31.    These requirements are essential to Hayward's ability to exercise its quality controls over Hayward Products because they allow Hayward to track which of its Authorized Sellers are approved to sell online and where its Authorized Sellers are selling online.  If a quality issue arises through an online sale, Hayward can identify the Authorized Seller that made the sale, contact the Authorized Seller, and address the issue immediately.  Hayward is unable to take such action against unauthorized sellers because, for example, it doesn't always know who these sellers are and cannot obtain their cooperation in addressing any product quality issues that may arise.

32.    In addition to limiting where and how Authorized Sellers can sell Hayward Products, the Hayward Policies also require Authorized Sellers to adhere to Hayward's quality control requirements related to the inspection, handling, and storage of Hayward Products.

33.    To ensure that customers receive the genuine and high-quality products they expect from Hayward, the Hayward Policies require that Authorized Sellers inspect all Hayward Products for damage, defects, broken seals, evidence of tampering, and other non-conformance and remove all such products from inventory. Authorized Sellers are prohibited from selling damaged or defective products. Further, to assist Hayward in identifying any product quality issues, Authorized Sellers are required to report any defects to Hayward.

34.    The Hayward Policies also require that Authorized Sellers comply with all instructions provided by Hayward regarding product storage, handling, and shipping. This requirement helps ensure that Hayward Products are stored properly and are not damaged before being shipped to the consumer.

9

35. To avoid consumer confusion and ensure that customers receive genuine Hayward Products, Authorized Sellers are prohibited from relabeling, repackaging, or altering Hayward Products. Authorized Sellers must not remove, translate, or modify the contents of any label or literature on or accompanying Hayward Products. Further, Authorized Sellers are prohibited from tampering with, defacing, or otherwise altering any identifying information on Hayward Products, including any serial number, UPC code, batch or lot code, or other identifying information.

36. Hayward also ensures that consumers receive safe products by requiring that Authorized Sellers assist with recalls and other consumer safety information efforts.

37. The Hayward Policies also require that Authorized Sellers provide certain services to their customers. Authorized Sellers must familiarize themselves with the special features of all Hayward Products kept in their inventory. This requirement ensures that Authorized Sellers are uniquely qualified to advise customers on the selection and safe use of Hayward Products.

38. Following the sale of Hayward Products, Authorized Sellers supply ongoing support to end-user consumers and are required to provide customer service and support by promptly responding to consumer inquiries and complaints.

39. Hayward's quality control requirements are legitimate and substantial and have been implemented so that Hayward can control the quality of goods manufactured and sold under the Hayward Trademarks, so as to protect consumers, as well as the value and goodwill associated with the Hayward Trademarks.

40. Hayward's quality control requirements are also material in that they are designed to protect consumers and prevent them from receiving poor quality products. Consumers would find it material and relevant to their purchasing decision to know whether a Hayward Product they were considering buying was being sold by an Authorized Seller who is subject to Hayward's

quality control requirements or whether the product is being sold by an unauthorized seller who is not subject to, and does not abide by, Hayward's quality controls and over whom Hayward is unable to exercise its quality controls.

**D.    Genuine Hayward Products Come with Coverage under Hayward's Warranty Program; Defendants' Products Do Not**

41.    Hayward Products purchased from Authorized Sellers also come with coverage under Hayward's warranty program (the "Warranty Program"). Under the Warranty Program, Hayward warrants to the original purchaser of Hayward Products that the product and its components will be free from defects in materials and workmanship for a specific period of time set forth by the warranty applicable to the given product.

42.    Hayward extends Warranty Program coverage only to products that were sold by Authorized Sellers that are subject to Hayward quality controls. Because products sold by unauthorized sellers are not subject to Hayward quality controls and Hayward cannot ensure the quality of such products, Hayward does not extend Warranty Program coverage to products sold by unauthorized sellers, such as Defendants.

43.    Hayward tells consumers that "[b]ecause Hayward cannot control the quality of products sold by unauthorized sellers, our limited warranties apply only to a product that was purchased from Hayward or a Hayward authorized seller, unless otherwise prohibited by law." Here is a screenshot of the warranty page (annotated) on Hayward's website:

11

**WARRANTY**

Enjoy peace of mind knowing that purchasing your Hayward products from an authorized seller will ensure that you receive knowledgeable product performance and application insights along with warranty support if you ever need it.

*June 30, 2023 NOTICE: Any applicable warranty coverage for a product shall not commence prior to the delivery date of that product notwithstanding anything stated elsewhere to the contrary.*

*September 11, 2020 NOTICE: Because Hayward cannot control the quality of products sold by unauthorized sellers, our limited warranties apply only to a product that was purchased from Hayward or a Hayward authorized seller, unless otherwise prohibited by law.*

WHERE TO BUY

44.     The Warranty Program is a material component of genuine Hayward Products. Consumers who purchase Hayward Products with the Warranty Program receive the peace of mind that they are receiving a high-quality product that Hayward stands behind the product, and that if a defect occurs, they will have the ability to have the product repaired or refunded.

**E.     Defendants Are Not Authorized Sellers and, without Permission, Are Selling Products Bearing the Hayward Trademarks**

45.     To ensure compliance with Hayward's quality controls and to guard against consumer confusion, Hayward regularly audits its Authorized Sellers, particularly those who are authorized to sell Hayward Products online.

46.     In the course of monitoring online listings of Hayward Products, Hayward discovered a high volume of products bearing the Hayward Trademarks that Defendants are, without permission, advertising, offering for sale, and/or selling on Amazon under the storefront name "Pinch Me Pools."  One example is pasted below.

12



And here is an enlarged shot of the seller information, showing that the seller is the Pinch Me Pool

storefront for Defendants:



---

3 https://www.amazon.com/Hayward-W3SP2603VSP-Super-Pump-Variable-Speed/dp/B07ST63CQY/ref=sr_1_42?dib=eyJ2IjoiMSJ9.iwBX-x0FlF_Ovytq5fQXJiB-DkCWSXUWKWdrkyfv71q0VbNnEQ0udVp3D1M8trM4fCKYMqQvlH-grAuLQc34_YkDZkQ_wguKk0dLY8s5sVDRbVeq7LR3BIBlkFnscjInW-qC5ukFj5kYcb7IS69HS1WDNGDEKP0UPy0mfEFNi18.htIKXqk9HVWFDEmTJ3mAk-3Eg55Feop93YFy7QI3_r4&dib_tag=se&m=A1VC89FO4UFAJZ&marketplaceID=ATVPDKIKX0DER&nsdOptOutParam=true&qid=1771349242&s=merchant-items&sr=1-42&xpid=5fzcOef7JGpgt&th=1 (accessed February 18, 2026)

47.     As seen in the example above, the listed product appears in all respects to be a genuine Hayward Product, and the Hayward Trademarks are used in the headline.  The seller's name appears in small print.  A consumer may be misled by this advertising and not notice the small print that the seller is actually Pinch Me Pools (as shown in the red circle above).

48.     Another online listing from Pinch Me Pools offering a Hayward product is featured below.



49.     This example shows that the product appears to be a genuine Hayward Product, with the Hayward trademark used on the product, in the headline and, appearing just below the

---

[4]https://www.amazon.com/Hayward-SPX3200A-Housing-Replacement-Tristar/dp/B00564FCA8/ref=sr_1_26?dib=eyJ2IjoiMSJ9.fHFOLhQfQVcpUffnQPJSfjJnh6018t GV4Y_ehp9E4UOKYjvbfVb23myx7erjpErwBUPSjZRfh-I5MP3LiiwStZqvDc77vaKcLvR0p0CS9DCqfhAMPwLmd9XsSZFQG6ZZcnWBRDoIK1zp70b i-ucThwOasNVH1N2s-P7OYFqjnXMcMWNC-bOTuscfol7-Cks9POdGcx-PXaC9HVKU4FkpXh_uI-V9wHuKG1M2vC3c1_0.gvUkImGRc5wdf0H8ab3rHm8A5hrDitZ5GUWfNjRqtOY&dib_tag=s e&m=A1VC89FO4UFAJZ&marketplaceID=ATVPDKIKX0DER&nsdOptOutParam=true&qid =1771349222&s=merchant-items&sr=1-26&xpid=5fzcOef7JGpgt (accessed February 18, 2026)

headline, the statement to "visit the Hayward Store." Consumers are likely to be misled by this advertisement and not notice that Pinch Me Pools is the actual seller.

50. Moreover, Defendants advertise and sell Hayward's "Expert Line" products on their websites, like, Aquamdnet.com. A representative example appears below:



**Exhibit 1**, Email from B. Griffin at Hayward to L. Jones dated March 7, 2025.

51. Expert Line products, like the heater above, violate Hayward's Expert Line policy. Under that policy, Expert Line products cannot be sold online by anyone. Expert line products are reserved for brick-and-mortar retailers, suppliers, or builders. Defendants are not approved to sell Hayward Products, let alone Expert Line products. Given the many unscrupulous resellers, like Defendants, selling products online today, an Authorized Seller wishing to sell Hayward Products

online must first be vetted and approved by Hayward to be an authorized online reseller ("Authorized Online Reseller") and must abide by Hayward's Authorized Online Reseller Policy and Online Reseller Agreement. Authorized Online Resellers may sell Hayward Products only on websites and through marketplace storefronts that Hayward has specifically approved, which again allows Hayward to have full oversight over those parties authorized to sell their products online.

52.     Defendants are not Authorized Sellers (or Authorized Online Resellers) of Hayward Products and are not subject to, and do not comply with, Hayward's Authorized Seller requirements or the Hayward Policies. Defendants did not obtain the Hayward Products they are selling from Hayward. Defendants likely misrepresented their status to one or more of Hayward's Authorized Sellers in order to get Hayward Products for resale. Hayward has asked Defendants to name the source of their unauthorized Hayward Products, but Defendants have not replied.

53.     In particular, Defendants are not authorized to sell Hayward Products online and do not comply with the additional quality control requirements Hayward imposes on its authorized online resellers.

54.     Defendants have not applied to be Authorized Sellers or Authorized Online Resellers of Hayward Products, and Hayward has not approved Defendants to be Authorized Online Resellers of its products. As such, Defendants have not agreed to be bound by the Hayward Policies.

55.      As set forth below, multiple consumers have complained about the products Defendants sold to them and that Defendants are selling used and poor quality products.

56.     Despite not being approved as Authorized Sellers or Authorized Online Resellers and not meeting the quality control requirements Hayward imposes on its Authorized Sellers and

Authorized Online Resellers, Defendants have sold, and continue to sell, products bearing the Hayward Trademarks on their Amazon and EBay storefront.

57.     Indeed, as seen in the examples above, Defendants' product listings use the Hayward Trademarks in multiple places, including on photos of the products, in the headline, and in the description of the product, as shown in the examples above.

**F.     Defendants Do Not Abide by Hayward's Quality Controls and Customer Service Requirements**

58.     Defendants have not abided by Hayward's quality control measures that are imposed upon genuine Hayward Products sold by Authorized Sellers

59.     Hayward's quality control policies also include, *inter alia*, the following measures:

- Inspection of Hayward Products for damage, defects, or tampering and removal or recall of such products.

- Training needed to accurately describe, demonstrate, and sell products, including training on product selection and safe use.

- Customer service and product support requirements, including taking appropriate steps to address complaints and negative reviews from customers.

- Assisting with product recalls and investigation of quality issues.

60.     Defendants have not abided by the above-listed measures, among others, thus interfering with Hayward's quality controls.  Hayward is unable to audit Defendants to ensure they are complying with Hayward's quality controls and/or close their account if they fail to comply with Hayward's quality control requirements.

17

**G      Defendants Are Infringing the Hayward Trademarks by Selling Products Bearing the Hayward Trademarks that Do Not Come with Warranty Program Coverage, and that Are Not Subject to, Hayward's Quality Controls and Customer Service Requirements**

61.     The products Defendants sell bearing the Hayward Trademarks fail to adhere to the extensive and legitimate quality controls that Hayward exercises over Hayward Products to protect consumers and Hayward's brand goodwill.

62.     The products sold by Defendants do not come with Warranty Program coverage.

63.     The products sold by Defendants are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

64.     Because the products Defendants sell do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Hayward Products and are not genuine Hayward Products.

65.     Defendants' unauthorized sale of products bearing the Hayward Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine Hayward Products, when, in fact, they are not.

66.     Defendants' unauthorized sale of products bearing the Hayward Trademarks infringes on the Hayward Trademarks and diminishes their value.

67.     Despite these facts, Defendants have sold, and continue to sell, products bearing the Hayward Trademarks through their Amazon and eBay Storefronts and through other online platforms without Hayward's consent.

68.     Through their interactive Amazon Storefronts and their own websites, Defendants have advertised and marketed infringing products bearing the Hayward Trademarks to consumers in North Carolina.

69.     On information and belief, through their interactive Amazon and eBay Storefronts, Defendants advertise to residents and/or sold to consumers in North Carolina.

70.     On information and belief, through their interactive Amazon and eBay Storefront, Defendants have advertised and/or sold infringing products bearing the Hayward Trademarks to North Carolina through the regular course of business.

**H.     Hayward Has Attempted to Stop Defendants' Illegal Sale of Hayward Products But Defendants Continue to Willfully Infringe on the Hayward Trademarks**

71.     After Hayward discovered products bearing the Hayward Trademarks being illegally sold on their websites and Amazon storefront, Hayward investigated the storefront to determine who was operating the storefront.

72.     After conducting an investigation, Hayward identified Defendants and Lance Jones as the owner or operator of the Pinch Me Pools storefront

73.     Hayward sent at least three cease-and-desist communications to Defendants notifying them of their illegal conduct.  For example, in an email from Hayward's E-commerce Business Manager, Brian Griffin, Hayward warned Mr. Jones that he and his companies are not authorized to sell Hayward Products and requested him to remove the advertisements of all Hayward Products. *See* **Exhibit 1**, Email from B. Griffin to Lance Jones at AquaMd LLC dated March 7, 2025; *see also* **Exhibit 2**, Email from B. Griffin to W. Hite at Poolquip, dated February 13, 2025; **Exhibit 3,** Email from B. Griffin to W. Hite at Poolquip dated March 6, 2026. In a follow-up letter from Hayward's in-house legal department, Hayward further warned Defendants that they could face a lawsuit and that they were continuing to infringe Hayward's trademarks and tortiously interfering with Hayward's business relations. *See* **Exhibit 4**, Letter from S. Halpern to L. Jones at Aquamaid Pool Techs, d/b/a Pinch Me Pools and PoolQuip dated January 27, 2026.

19

Hayward demanded that Mr. Jones and Defendants immediately stop selling products bearing the Hayward Trademarks.

74.     Defendants did not comply with Hayward's demands and continued selling products bearing the Hayward Trademarks on their Amazon Storefront.

75.     As discussed above, the products that Defendants sell are not genuine Hayward Products and are materially different from genuine Hayward Products because they are not subject to, interfere with, and do not comply with Hayward's quality controls.

76.     By continuing to sell non-genuine products bearing the Hayward Trademarks, Defendants have interfered with Hayward's ability to exercise control over products being sold bearing the Hayward Trademarks.

77.     Defendants have also misled, and continue to mislead, consumers into believing they are purchasing genuine Hayward Products that comply with Hayward's quality controls when, in fact, they do not.

78.     Defendants' actions infringe the Hayward Trademarks.

79.     Further, Defendants' disregard of communications from Hayward and continued selling of non-genuine products, despite being informed of their unlawful conduct, demonstrates that they are acting intentionally, willfully, and maliciously.

**I.      Defendants Are Tortiously Interfering with Hayward's Agreements With Its Authorized Sellers**

80.     Hayward's agreements with its Authorized Sellers prevent those Authorized Sellers from selling Hayward Products to third parties who are not Authorized Resellers of Hayward Products but intend to resell the products anyway.

81.     Defendants were informed of this prohibition in Hayward's previous cease-and-desist emails and letters. That correspondence informed Defendants that the agreements between

Hayward and Hayward's Authorized Sellers prohibit Authorized Sellers from selling Hayward Products to any person or entity that is not an Authorized Seller but intends to resell the products.

82.     Hayward also informed Defendants that by purchasing Hayward Products from an Authorized Seller for purposes of resale, they were causing a breach of the agreements between Hayward and its Authorized Sellers and interfering with Hayward's agreements and business relationships.  *See* **Exhibit 4**.

83.     Hayward also warned Defendants that if by acquiring Hayward Products from Hayward's Authorized Sellers for purposes of reselling them, they could be liable for tortiously interfering with Hayward's contracts and/or business relationships.  *See id.*

84.     Despite being so warned, Defendants have continued to acquire Hayward Products from Hayward's Authorized Sellers with the intent to resell them.

85.     Upon information and belief, Defendants do not disclose to Authorized Sellers that they intend to resell the Hayward Products they purchase from Authorized Sellers.

86.     Defendants have willfully and knowingly induced and are continuing to induce unknown Authorized Sellers to breach their agreements with Hayward so that they can acquire Hayward Products and unlawfully infringe upon the Hayward Trademarks by reselling the products.

**N.     Hayward Has Suffered Significant Harm As a Result of Defendants' Conduct**

87.     The unauthorized sale of products bearing the Hayward Trademarks through unauthorized sellers, such as Defendants, has caused significant harm to the Hayward brand.

88.     When consumers receive non-genuine, damaged, or poor quality products from unauthorized sellers, such as Defendants, those consumers are likely to associate that negative experience with Hayward.  In addition, because the unauthorized product is not covered under Hayward's Warranty Program, consumers will not receive a replacement or repair under warranty,

further aggravating those consumers.  As such, Defendants' ongoing sale of unauthorized products bearing the Hayward Trademarks harms Hayward and the Hayward brand.

89.    Disgruntled consumers who have purchased unauthorized products from Defendants' storefronts or have had problems getting warranty coverage have complained, or are likely to complain, on online review forums and, due to the confusion caused by Defendants, have erroneously associated the unfortunate experience, or are likely to associate the experience, with Hayward. Representative examples of consumer complaints confusing Defendants' infringing products with Hayward's genuine warranty-protected products are shown below.



5

5 https://www.amazon.com/product-reviews/B00269II66/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar  (accessed February 23, 2026)



90.     Hayward has suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions, including, but not limited to, loss of sales, damage to its intellectual property, and damage to its existing and potential business relations.

91.     Hayward has suffered, and will continue to suffer, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

92.     Hayward is entitled to injunctive relief because Defendants will continue to unlawfully sell Hayward Products and infringe on the Hayward Trademarks, causing continued irreparable harm to Hayward's reputation, goodwill, relationships, intellectual property, and brand integrity.

93.     Defendants' conduct was knowing, intentional, willful, malicious, wanton, and contrary to law.

---

94.     Defendants' willful violations of the Hayward Trademarks and continued pattern of misconduct demonstrate intent to harm Hayward.

## FIRST CAUSE OF ACTION
### Trademark Infringement in Violation of Section 32 of the Lanham Act, 15 U.S.C. §§ 1114

95.     Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

96.     Hayward is the owner of the Hayward Trademarks.

97.     Hayward has registered the Hayward Trademarks with the United States Patent and Trademark Office.

98.     The Hayward Trademarks are valid and in full force and effect.

99.     Defendants, at the direction and control of Lance Jones, willfully and knowingly used, and continue to use, the Hayward Trademarks in interstate commerce for purposes of selling products bearing the Hayward Trademarks on the internet without Hayward's consent.

100.    The products Defendants sell bearing the Hayward Trademarks are not authorized for sale by Hayward.

101.    The products Defendants sell bearing the Hayward Trademarks do not come with Warranty Program coverage.

102.    Hayward has established and implemented legitimate and substantial quality controls that apply to genuine Hayward Products.

103.    Hayward abides by these quality controls and requires all of its Authorized Sellers, including Authorized Online Resellers, to abide by these quality controls.

104.    Hayward's quality controls are material in that they protect consumers and prevent those consumers from receiving poor quality, damaged, and defective products.

24

105. The products Defendants sell bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

106. Because the products Defendants sell bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Hayward Products.

107. Because the products Defendants sell bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are not genuine Hayward Products.

108. Defendants' unauthorized sale of products bearing the Hayward Trademarks interferes with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

109. Defendants' unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendants offer are subject to and abide by Hayward's quality controls and Warranty Program when, in fact, they do not.

110. Defendants' unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendants offer for sale are genuine Hayward Products when, in fact, they are not.

111. Defendants' unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because

that unauthorized conduct suggests that the products Defendants offer for sale are sponsored by, authorized by, or otherwise connected with Hayward when, in fact, they are not.

112.    Defendants' unauthorized use of the Hayward Trademarks has infringed upon and materially damaged the value of the Hayward Trademarks and caused significant damage to Hayward's business relationships.

113.    As a proximate result of Defendants' actions, Hayward has suffered, and continues to suffer, immediate and irreparable harm.  Hayward has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

114.    Hayward is entitled to recover its damages caused by Defendants' infringement of the Hayward Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

115.    Hayward is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Hayward will suffer irreparable harm.

116.    Hayward is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Hayward Trademarks.

<u>**SECOND CAUSE OF ACTION**</u>
**Unfair Competition and False Designation of Origin in Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

117.    Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

118.    Hayward is the owner of the Hayward Trademarks.

26

119.     The Hayward Trademarks are valid and subsisting trademarks in full force and effect.

120.     Defendants have willfully and knowingly used, and continue to use, the Hayward Trademarks in interstate commerce for purposes of selling products bearing the Hayward Trademarks without Hayward's consent.

121.     The products Defendants advertise and sell bearing the Hayward Trademarks are not authorized for sale by Hayward.

122.     The products Defendants sell bearing the Hayward Trademarks do not come with Warranty Program coverage.

123.     Hayward has established and implemented legitimate and substantial quality controls that apply to genuine Hayward Products.

124.     Hayward abides by these quality controls and requires all of its Authorized Sellers, including its Authorized Online Resellers, to abide by these quality controls.

125.     Hayward's quality controls are material in that they protect consumers and prevent those consumers from receiving poor quality, damaged, and defective products.

126.     The products Defendants advertise and sell bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

127.     Because the products Defendants advertise and sell bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Hayward Products and are not genuine Hayward Products.

27

128.    Defendants' unauthorized advertisement and sale of products bearing the Hayward Trademarks interfere with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

129.    Defendants' unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendants offer are subject to and abide by Hayward's quality controls and Warranty Program when, in fact, they do not.

130.    Defendants' unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendants advertise and offer for sale are genuine Hayward Products when, in fact, they are not.

131.    Defendants' unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendants advertise and offer for sale are sponsored by, authorized by, or otherwise connected with Hayward when, in fact, they are not.

132.    Defendants' unauthorized use of the Hayward Trademarks has infringed upon and materially damaged the value of the Hayward Trademarks and caused significant damage to Hayward's business relationships.

133.    As a proximate result of Defendants' actions, Hayward has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

134.    Hayward is entitled to recover its damages caused by Defendants' infringement of the Hayward Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

135.    Hayward is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Hayward will suffer irreparable harm.

136.    Hayward is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Hayward Trademarks.

### THIRD CAUSE OF ACTION
**Unfair Competition in Violation of Section 43(a) of the Lanham Act,
15 U.S.C. § 1125(a), by Passing Off**

137.    Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

138.    Hayward and Defendants compete in the market for swimming pool equipment, such as pumps, filters, and pool cleaning equipment.

139.    Hayward advertises, offers for sale, and sells in commerce pool equipment such as pumps and filters bearing the Hayward Trademarks. As seen above, the Hayward Trademarks, or confusingly similar marks, appear on packaging, labels, and literature included with purchased infringing products and also in online advertising and marketing materials used in connection with the sale and marking of pool pumps, cleaners, and filters bearing the Hayward Trademarks.

140.    As described above, Defendants advertise, offer for sale, and sell products that bear or are promoted with one or more of the Hayward Trademarks but that are materially different from genuine HAYWARD salt cells. Hayward has not authorized this conduct.

29

141.     Such conduct constitutes passing off in violation of Section 43(a) of the Lanham Act.

142.     Defendants' passing off is likely to cause and already has caused confusion, mistake, or deception as to the source or origin of the pumps and filters and has diverted sales from Hayward.

143.     Defendants' conduct has caused, and is continuing to cause, irreparable injury to Hayward, including to its reputation and goodwill, and Hayward has no adequate remedy at law. Unless such unauthorized use is enjoined, Hayward will continue to be irreparably harmed.

144.     Defendants were notified of their infringement and violation of Hayward policies but continued to sell the unauthorized products bearing the Hayward Trademarks.  Accordingly, Defendants' conduct, as described above, has been willful, wanton, reckless and in total disregard to Hayward's rights.

145.     By reason of Defendants' misconduct, Hayward has suffered, and will continue to suffer, monetary damages, and loss of goodwill.

**FOURTH CAUSE OF ACTION**
**Trademark Infringement and Unfair Competition**
**under North Carolina Common Law**

146.     Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

147.     This claim arises under the laws of the State of North Carolina.

148.     Hayward is the owner of the Hayward Trademarks.

149.     The Hayward Trademarks are valid and subsisting trademarks in full force and effect.

150.    The Hayward Trademarks are distinctive and widely recognized by the consuming public.  Hayward Products are sold and purchased on internet retail platforms like Amazon.com, and EBay.com and through Hayward's network of Authorized Sellers throughout the United States, including North Carolina.

151.    Hayward is widely recognized as the designated source of goods bearing the Hayward Trademarks.

152.    Defendants willfully and knowingly used, and continue to use, the Hayward Trademarks in interstate commerce for the purpose of advertising, promoting and selling products bearing the Hayward Trademarks on the internet without Hayward's consent.

153.    Hayward has not authorized Defendants to sell products bearing the Hayward Trademarks or to use the Hayward Trademarks in any manner.

154.    The products Defendants sell bearing the Hayward Trademarks do not come with Warranty Program coverage.

155.    Hayward has established and implemented legitimate and substantial quality controls that apply only to genuine (authorized) Hayward Products.

156.    Hayward abides by these quality controls and requires all of its Authorized Sellers, including Authorized Online Resellers, to abide by these quality controls.

157.    Hayward's quality controls are material in that they protect consumers and prevent those consumers from receiving poor quality, damaged, and defective products.

158.    The products Defendants sell bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

159.    Because the products Defendants sell bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with

31

Hayward's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Hayward Products and are not genuine Hayward Products.

160. Defendants' unauthorized sale of products bearing the Hayward Trademarks interferes with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

161. Defendants' unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendants offer are subject to and abide by Hayward's quality controls when, in fact, they do not.

162. Defendants' unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendants offer for sale are genuine Hayward Products when, in fact, they are not.

163. Defendants' unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Defendants offer for sale are sponsored by, authorized by, or otherwise connected with Hayward when, in fact, they are not.

164. Defendants' unauthorized use of the Hayward Trademarks has infringed upon and materially damaged the value of the Hayward Trademarks and caused significant damage to Hayward's business relationships.

165. As a proximate result of Defendants' actions, Hayward has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

166. Hayward is entitled to recover punitive damages because Defendants have acted with malice and aggravated and egregious fraud.

167. Hayward is entitled to recover its attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### Violation of North Carolina Unfair and Deceptive Trade Practices Act
### § 75-1.1, *et seq.*

168. Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

169. Plaintiff is the owner of the Hayward Trademarks.

170. The Hayward Trademarks are valid and subsisting trademarks in full force and effect.

171. Defendants willfully and knowingly used, and continue to use, the Hayward Trademarks in interstate commerce, including through their product listings on Amazon and EBay and their own interactive websites, for the purpose of advertising promoting, and selling products bearing the Hayward Trademarks without the consent of Hayward.

172. Defendants' advertisements and promotions of products unlawfully using the Hayward Trademarks have been disseminated to the relevant purchasing public, including consumers in North Carolina.

173. At all relevant times, Defendants were engaged in commerce in the State of North Carolina and were affecting North Carolina commerce.

174. Defendants use the Hayward Trademarks with the intent that consumers will rely on Defendants' use of the Hayward Trademarks and believe that Defendants are selling genuine Hayward products.

175. The products Defendants advertise, promote, and sell bearing the Hayward Trademarks are not authorized for sale by Hayward.

33

176. Hayward has established legitimate and substantial quality control procedures over Hayward products.

177. Hayward abides by these quality control procedures and requires all Authorized Sellers to abide by these quality controls.

178. Hayward's quality controls are material in that they protect consumers and prevent those consumers from receiving poor quality products that could harm them. When a consumer is deciding whether to purchase a product bearing the Hayward Trademarks, whether the product is subject to and abides by Hayward's quality controls would be relevant to the consumers' purchasing decision.

179. The products Defendants advertise, promote, and sell bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements and do not come with Warranty Program coverage.

180. Because the products Defendants advertise, promote, and sell bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Hayward Products and are not genuine Hayward Products.

181. The products Defendants sell are materially different from genuine Hayward products because they do not come with Warranty Program coverage and are not subject to Hayward's quality controls.

182. Defendants' unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks interferes with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

183.     Defendants' unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are subject to, and abide by, Hayward's quality controls and come with Warranty Program coverage when, in fact, they are not.

184.     Defendants' unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because those unauthorized actions suggest that the products Defendants offer for sale are genuine Hayward Products when, in fact, they are not.

185.     Defendants' unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because those unauthorized actions suggest that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with Hayward when, in fact, they are not.

186.     Defendants' unauthorized and deceptive use of the Hayward Trademarks is material and likely to influence customers to purchase the products they sell, as consumers are likely to believe that products Defendants advertise using the Hayward Trademarks are genuine Hayward products that are subject to, and abide by, Hayward's quality controls requirement and come with benefits associated with authentic Hayward Products, when, in fact, they do not.

187.     Defendants' unauthorized use of the Hayward Trademarks in advertising, and otherwise, infringes on the Hayward Trademarks.

188.     Defendants' use of the Hayward Trademarks in connection with the unauthorized advertising, promotion, and sale of Hayward products is an unconscionable, deceptive, and fraudulent business practice which violates N.C. Gen. Stat. § 75-1.1 ("UDTPA").

189.     Defendants misrepresent the Hayward products they sell as genuine Hayward Products by using the Hayward Trademarks on its product headlines and in the description of its products.

190.     Defendants are trying to pass off their products as genuine Hayward Products or are falsely associating their products with Hayward.

191.     Defendants deceptively and confusingly suggest to consumers that Hayward has authorized or sponsored the products that they are selling, or that Defendants are somehow affiliated with Hayward, when they are not.

192.     Defendants actions and conduct were intended to and did cause and continues to cause confusion among consumers as to the designation and source of the products Defendants sell.

193.     Defendants' conduct is calculated to deceive the public and constitutes unfair and deceptive business practices.

194.     As a direct and proximate result of Defendants' unlawful, unfair, and infringement conduct, Plaintiff has suffered, and continues to suffer, immediate and irreparable harm. Plaintiff has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

195.     Pursuant to N.C. Gen. Stat. § 75-1.1, Plaintiff is entitled to an injunction enjoining Defendants' unlawful conduct, and an award of treble damages and attorneys' fees. Unless enjoined by this Court, Defendants will continue to engage in unfair, unlawful, and misleading business practices as alleged in this complaint, in violation of the UDTPA. Hayward and the public will be irreparably harmed if an order of the Court enjoining such practices is not granted. Hayward is entitled to a preliminary and permanent injunction.

196.     Hayward has no adequate remedy at law for the injury alleged in this cause of action and the injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

**SIXTH CAUSE OF ACTION**
**Tortious Interference With Contract And Business Relations**

197.     Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

198.     Hayward Products are sold exclusively through its network of Authorized Sellers, including Authorized Online Resellers.

199.     Hayward has entered into agreements with Authorized Sellers to sell Hayward Products. These agreements specifically prohibit Hayward's Authorized Sellers from selling Hayward Products to unauthorized resellers, such as Defendants.

200.     Defendants have sold a high volume of Hayward Products through their storefronts.

201.     Hayward has not itself sold any Hayward Products to Defendants.

202.     Based on these facts, it is plausible and a reasonable inference that Defendants have purchased the Hayward Products they are reselling, and have resold, from one or more of Hayward's Authorized Sellers.

203.     Defendants knew that Hayward's agreements with its Authorized Sellers prohibit Hayward's Authorized Sellers from selling Hayward Products to any seller who, such as Defendants, is not an Authorized Seller and intends to resell the products.

204.     Defendants had notice of this prohibition through the cease-and-desist letter they received from Hayward.

205.     Despite knowing of this prohibition, Defendants intentionally, knowingly and willfully interfered with Hayward's agreements with its Authorized Sellers by inducing the

37

Authorized Sellers to breach their agreements and sell products to Defendants so they could resell them on the internet.

206.    After being notified of this prohibition, Defendants continued to intentionally induce one or more of Hayward's Authorized Sellers to breach their agreements by continuing to acquire products from Hayward's Authorized Sellers for the purposes of selling them on the internet.

207.    In inducing Hayward's Authorized Sellers to breach their contracts with Hayward, Defendants acted with a wrongful purpose—specifically, unlawfully infringing upon and materially damaging the value of the Hayward Trademarks by reselling the products they obtained from Authorized Sellers in violation of their contracts.

208.    Defendants also acted with wrongful means—specifically, upon information and belief, Defendants concealed and continue to conceal their intent to resell the Hayward Products when they purchase them from Authorized Sellers.

209.    Because Authorized Sellers are prohibited by contract from selling products to persons or entities who are not authorized sellers but intend to resell the products, Authorized Sellers would not have sold products to Defendants if they had known that Defendants intended to resell those products.

210.    Defendants knew that Authorized Sellers would be breaching their agreements by selling products to Defendants for purposes of resale, and would accordingly consider Defendants' intent to resell material to their decision to sell products to Defendants.

211.    Accordingly, Defendants' concealment of their intent to resell products is a wrongful omission of a material fact, which wrongfully induced Authorized Sellers to breach their agreements with Hayward.

212.    Authorized Sellers have complained to Hayward about Defendants' unauthorized reselling of Hayward Products and have threatened to discontinue their business relationship with Hayward because of Defendants' actions.

213.    Based on these facts, there is no justification for Defendants' actions.

214.    Hayward has no way of knowing the full extent of the sources of Defendants' products and, therefore, Hayward must take discovery in this action to learn the specific identities of the Authorized Sellers that sold Hayward Products to Defendants. Defendants, however, know the sources of the Hayward Products they have obtained and the basis for Hayward's claim of tortious interference. Hayward's agreements with its Authorized Sellers are a specific class of contract that Defendants caused Authorized Sellers to breach when they purchased Hayward Products from Authorized Sellers for resale.

215.    Defendants' actions have caused injury to Hayward for which Hayward is entitled to compensatory damages in an amount to be proven at trial.

216.    Hayward is entitled to recover punitive damages because Defendants have acted with malice and aggravated and egregious fraud.

217.    Hayward is entitled to recover its attorneys' fees and costs.

### SEVENTH CAUSE OF ACTION
### Unjust Enrichment

218.    Hayward repeats and realleges the allegations contained in the previous paragraphs as if fully set forth herein.

219.    Defendants have been unjustly enriched at the expense of Hayward.

220.    Defendants knowingly received and retained benefits including revenue, profits, and other economic advantages, derived from the unauthorized use of the Hayward trademarks, brand, goodwill, and quality control.

221. Defendants' enrichment was obtained through improper and wrongful conduct, including the sale, distribution and promotion of unauthorized and infringing Hayward products.

222. Hayward conferred these benefits indirectly and involuntary and Defendants' retention of such benefits without compensation is inequitable and unjust.

223. As a direct and proximate result of Defendants unjust enrichment and unlawful conduct, Hayward has suffered damages.

## EIGHTH CAUSE OF ACTION:
### Contributory Infringement and/or Vicarious Infringement

224. Hayward repeats and realleges the allegations contained in the previous paragraphs as if fully set forth herein.

225. At all times material, Defendants were owned, operated and/or controlled by Lance Jones or members of his family. Upon information and belief, Lance Jones is the managing member, president or operator/controller/manager of the Defendants. Upon information and belief, all Defendants share the same principal business address and operate in concert. Upon information and belief, Lance Jones exercises direct control over, and has the right and ability to supervise, the operations of the Defendant entities, including the websites and storefronts e.g., on Amazon.com, Walmart.com, and EBay.com and otherwise. Lance Jones controls, owns and/or operates the infringing websites and entities and has authority to prevent or cease the infringing conduct, but has not done so.

226. Defendants are direct infringers operated as joint participants in a common enterprise. Defendants had the right and ability to supervise, control and/or monitor the infringing activities as described above.

227. Defendants knew or had reason to know what third parties were engaging in trademark infringement involving Haywards's trademarks, including selling unauthorized Hayward Products.

228. Despite such knowledge, Defendants intentionally induced, facilitated, or materially contributed to the infringing conduct, by providing a platform, services, and continued access necessary for the infringement to occur.

229. Defendants failed to take reasonable steps to prevent or stop the infringing activity, even after receiving actual or construction notice of such infringement.

230. Moreover, Defendants exercised control over the advertisements and infringements, as described above.

231. As a direct and proximate result of Defendants' contributor infringement, Hayward has suffered and continues to suffer damages, including loss of control over its trademarks, harm to its reputation and good will, and monetary loss.

232. Defendants derived a financial benefit from the sale, distribution and marketing of the infringing Hayward products.

233. Defendants are vicarious liability for the trademark infringement, which has caused to cause substantial harm to Hayward.

**PRAYER FOR RELIEF**

WHEREFORE, Hayward asks for relief and judgment as follows:

A. Judgment in favor of Hayward and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B. a finding that all Defendants are jointly and severally liable to Hayward;

C. a finding that Defendants are all alter egos of each other;

D. a preliminary and/or permanent injunction barring Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") from the following conduct:

    i) advertising or selling, via the internet or otherwise, all Hayward Products;

    ii) using the Hayward Trademarks in any manner, including advertising on the internet;

    iii) importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Hayward Products as well as any products bearing the Hayward Trademarks;

    iv) disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Hayward Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing this trademark;

E. In addition, a preliminary and/or permanent injunction requiring the Enjoined Parties to complete the following actions:

    i) to remove from the Enjoined Parties' websites any reference to any Hayward Products, or the Hayward Trademarks;

ii)    to request removal from internet search engines (such as Google, Yahoo!, and Bing) and to remove from the internet any uses of the Hayward Trademarks that associate Hayward Products or the Hayward Trademarks with the Enjoined Parties or the Enjoined Parties' website;

iii)    to remove unauthorized uses of the Hayward Trademarks from the internet, including from the website www.amazon.com;

F.    An award of attorneys' fees, costs, and expenses;

G.    Enhanced damages, including double or treble damages under the Lanham Act and/or treble damages under N.C. Gen. Stat. § 75-16; and

H.    Such other and further relief as the Court deems just, equitable and proper

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Hayward demands a trial by jury on all issues so triable.

Respectfully submitted this the 25th day of February 2026,

*/s/ Patrick Grayson Spaugh*
Patrick Grayson Spaugh (N.C. Bar No. 49532)
**Womble Bond Dickinson (US) LLP**
301 South College Street, Suite 3500
Charlotte, NC 28202
Patrick.Spaugh@wbd-us.com

Erik Paul Belt*
Anne E. Shannon*
**McCARTER & ENGLISH, LLP**
265 Franklin Street
Boston, Massachusetts 02110
Tel: (617) 449-6500
ebelt@mccarter.com
ashannon@mccarter.com

*Pro hac vice* application forthcoming

*Attorneys for Plaintiff Hayward Industries, Inc.*

43